# EXHIBIT A

1  GERALD SINGLETON (SBN 208783)
   BRODY A. McBRIDE (SBN 270852)
2  SINGLETON LAW FIRM, APC
3  115 West Plaza Street
   Solana Beach, CA  92075
   Tel.   (760) 697-1330
4  Fax.   (760) 697-1329
5  Email.  gerald@geraldsingleton.com
           brody@geraldsingleton.com
6
   Attorneys for Plaintiff ASHLEY ALBIOSDELAPINIA
7

8  MAXWELL CHUCK AGHA (SBN 153625)
   160 Thorn Street, Suite 200
9  San Diego, CA 92103
10 Tel:  (619) 230-0330
   Fax:  (619) 230-1726
11 Email:  Maxwell.agha@bankershilllaw.com

12 Attorney for Plaintiff STEVEN A. SMITH

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                         COUNTY OF IMPERIAL

16 ASHLEY ALBIOSDELAPINIA,                 Case No.
17 individually and as representative of the
   ESTATE OF ADINA ALBIOSDELAPINIA,        Unlimited Civil Case
18 and STEVEN A. SMITH, individually,
                                           **COMPLAINT FOR INJURIES AND**
19      Plaintiffs,                        **DAMAGES**

20 v.                                      **DEMAND FOR JURY TRIAL**

21 COUNTY OF IMPERIAL, JULIE GARCIA,
22 BRENDA VALENCIA, and PAULA
   ALVARADO, ALBA CARE SERVICES,
23 INC., LUIS CANAL, PATRICIA CANAL,
   and DOES 1 through 100 inclusive,
24
25      Defendants.

26

27      Plaintiffs hereby file the following Complaint against Defendants COUNTY OF

28 IMPERIAL, ALBA CARE SERVICES INC., LUIS CANAL, PATRICIA CANAL, and DOES

                                         1

1    1-100.  Plaintiffs seek compensation for harm caused by the wrongful death of their one-year-old

2    daughter, Adina Albiosdelapinia, while Adina was a dependent of the COUNTY OF IMPERIAL

3    and in foster care through the Foster Family Agency ALBA CARE SERVICES, INC., and foster

4    parents LUIS CANAL and PATRICIA CANAL.

5                                    **JURISDICTION AND VENUE**

6           1.      This Court has jurisdiction of this case and these claims under California statutory

7    and common law.  The amount in controversy exceeds $25,000.

8           2.      Venue in this Court is proper because the acts and omissions set forth herein

9    occurred in the County of Imperial, State of California, and because Defendant COUNTY OF

10   IMPERIAL is a party to this suit.

11                        **GOVERNMENTAL CLAIMS FILING REQUIREMENT**

12          3.      Plaintiff ASHLEY ALBIOSDELAPINIA filed a timely claim under California[1]

13   Government Code §§ 900, et seq., against the COUNTY OF IMPERIAL on January 13, 2015.

14   Defendant COUNTY OF IMPERIAL rejected Plaintiff's claim via a letter dated February 3,

15   2015.  Plaintiff STEVEN SMITH has also filed a claim with the COUNTY OF IMPERIAL which

16   has been rejected.   Accordingly, Plaintiffs have complied with all applicable claim filing

17   requirements of California case and statutory law, and this complaint is timely under applicable

18   law.

19                                          **PARTIES**

20          4.      Plaintiff ESTATE OF ADINA ALBIOSDELAPINIA is the Estate of the decedent,

21   then one-year-old Adina Albiosdelapinia (hereinafter, "Adina").  The representative of the Estate

22   is Adina's mother, ASHLEY ALBIOSDELAPINIA. Adina was a minor who was removed from

23   the care of her biological mother and subsequently adjudicated a dependent of the Court pursuant

24   to Welfare & Institutions ("W&I") Code §300.  Adina was placed in foster care with Defendant

25   COUNTY OF IMPERIAL, which contracted with a private foster care agency, Defendant ALBA

26   CARE SERVICES, INC., to find a placement for Adina.   While Adina was in the physical

27

28          [1] All citations are to California law unless otherwise stated.

                                                    2

1   custody of a foster family certified by the ALBA CARE SERVICES, INC., she died after

2   sustaining injuries in the foster home of Defendants LUIS and PATRICIA CANAL.

3        5.    Plaintiff ASHLEY ALBIOSDELAPINIA (hereinafter, "Ashley") is a California

4   resident who, at all times relevant to this Complaint, resided in the County of Imperial.  Ashley

5   was Adina's mother.

6        6.    Plaintiff STEVEN A. SMITH ("SMITH") is a California resident who, at all times

7   relevant to this Complaint, resided in the County of Imperial.  SMITH was Adina's biological

8   father.

9        7.    Defendant COUNTY OF IMPERIAL ("COUNTY") is a municipal corporation

10   duly organized under the laws of the State of California and located in the County of IMPERIAL,

11   State of California.  The COUNTY, through its agencies, agents, and/or employees, including the

12   Department of Social Services, is legally responsible for the care of dependent children (like

13   Adina) under its control.

14        8.    At all times relevant to this Complaint, Defendants JULIE GARCIA, BRENDA

15   VALENCIA, and PAULA ALVARADO were employed by the COUNTY and were acting

16   within the course and scope of their employment for the COUNTY.  Defendants GARCIA and

17   VALENCIA were employed as social workers; Defendant ALVARADO was a supervisor.

18        9.    Defendant ALBA CARE SERVICES, INC. ("ALBA") is a corporation, form

19   unknown, which operates as a Foster family agency.  In this capacity, ALBA certifies foster

20   families to care for children (like Adina) who are dependents of the state.[2]  Foster family agencies

21   are paid by counties to provide placements (e.g., foster homes) for dependent children.  Unlike

22   traditional foster homes, however, which are licensed by the State of California, foster homes

23   used by agencies such as ALBA do not need to be licensed.  Instead, they are certified by the

24   agency.  ALBA certified the home in which Adina was fatally injured.

25        10.    Defendants LUIS CANAL and PATRICIA CANAL are natural persons who, at

26   the time of Adina's injuries, operated a foster home certified by ALBA.  The COUNTY, and

27

28      [2] See, inter alia, Health & Safety Code ("H&S") §§ 1506, et seq., for the legal requirements of foster family agencies and the homes they use.

COMPLAINT FOR INJURIES AND DAMAGES

1    Defendant ALBA, placed Adina in the care of Defendants LUIS and PATRICIA CANAL.

2          11.    Defendant DOES 1-100 are natural persons and/or legal entities (including

3    corporations and/or municipal and/or governmental entities), form unknown, whose true

4    names/identities and capacities are unknown at this time and/or unknown corporations or entities.

5    Plaintiffs are informed and believe and thereon allege that each of said fictitiously named DOE

6    Defendants is responsible in some manner for the acts, omissions, and damages alleged herein.

7    Plaintiffs are unaware of the true names and capacities of the DOE Defendants, and, therefore, sue

8    these Defendants under such fictitious names.  Plaintiffs are furthermore informed and believe

9    and thereon allege that each of said fictitiously named Defendants was the agent, servant and

10   employee of each and every other Defendant acting within the course and scope of his or her

11   agency and employment and with the knowledge, ratification and consent of each respective

12   principal.  Plaintiffs will seek leave to amend this Complaint if and when the true names and

13   capacities of the DOE Defendants have been ascertained.

14   **GOVERNMENTAL LIABILITY**

15         12.    Plaintiffs allege that all agents and employees of Defendant COUNTY carried out

16   all acts and omissions alleged herein in their capacity as agents and/or employees of the

17   COUNTY and during the course and scope of their employment with Defendant COUNTY.

18         13.    Individuals employed by a governmental agency or entity (both named Defendants

19   and DOES) are liable for their conduct to the same extent as a private person under Government

20   Code § 820(a).  This includes, but is not limited to, acts and omissions that constitute negligence

21   under Civil Code § 1714, which reads, in pertinent part, "Everyone is responsible, not only for the

22   result of his or her willful acts, but also for an injury occasioned to another by his or her want of

23   ordinary care."

24         14.    Defendant COUNTY is liable in respondeat superior for the acts and omissions of

25   its employees committed during the course and scope of said employees' employment under

26   Government Code § 815.2(a).  Accordingly, the COUNTY is vicariously liable under

27   Government Code § 815.2(a) for all violations of state law by any of its employees alleged herein.

28         15.    All defendants are jointly and severally liable for any and all damages awarded

1   (except punitive damages).  Under Government Code § 825(a), the COUNTY is obligated to pay

2   any compensatory damages and costs awarded against their employees.

3   <u>**ALLEGATIONS OF FACT**</u>

4   16.   Adina was born on January 9, 2013.  Ashley is Adina's biological mother and had

5   legal custody of Adina prior to Adina being removed from her care by the COUNTY on or about

6   November 2, 2014.  SMITH is Ashley's biological father.

7   17.   Scott Faris is Ashley's step-father and is married to Ashley's mother, Denise Faris.

8   Mr. Faris has helped to raise Ashley since she was four years old.  Mr. Faris considered Adina to

9   be his granddaughter and treated her as such.

10   18.   On or about November 2, 2014, Mr. Faris went to the City of Imperial Police

11   Department because he was concerned for the safety of Adina after watching a video on Facebook

12   that depicted Nathan Lopez, Ashley's boyfriend, laughing while his friend, Jake McBride, gave

13   lighted matches to Adina.  Mr. Faris showed the video to a police officer.

14   19.   On November 3, 2014, as a result of Mr. Faris expressing concern for Adina's

15   safety, police officers from the Imperial Police Department searched Ashley's home and found

16   marijuana and two knives on or near the bed belonging to Ashley and Nathan Lopez.

17   20.   Mr. Faris and Ashley's mother, Denise, waited outside of the home during the

18   search by Imperial Police.

19   21.   After searching Ashley's home, the Imperial Police arrested Ashley, Nathan

20   Lopez, and Jake McBride for child endangerment.

21   22.   On that same day, the officers from the City of Imperial Police Department

22   contacted COUNTY social worker JULIE GARCIA and advised Defendant GARCIA that

23   Imperial Police Officers had arrested Ashley and Nathan Lopez.

24   23.   Defendant GARCIA then took Adina into her custody.

25   24.   Adina's grandparents, Scott and Denise Faris, told Defendant GARCIA that they

26   wanted to take Adina and care for her.

27   25.   W&I §309(a) states that when a social worker takes a child into temporary custody

28   under the provisions of the W&I, "[t]he social worker <u>shall</u> immediately release the child to the

1    custody of ... [a] responsible relative" unless certain specific circumstances, which are set forth in

2    section 309, are present.  (Emphasis added.)  Here, none of the factors listed in section 309 that

3    would have relieved Defendant GARCIA from her mandatory duty[3] to release Adina to Scott and

4    Denise Faris were present.

5            26.    Despite the mandatory duty set forth in W&I §309, however, Defendant GARCIA

6    did _not_ give Adina to her willing and capable grandparents, whom Adina knew and loved.

7    Instead, Defendant GARCIA took Adina to the emergency shelter to stay with strangers.

8            27.    Social worker GARCIA also did _not_ obtain a warrant to remove Adina from her

9    mother's care, and there were _no_ exigent circumstances to justify Defendant GARCIA's failure to

10   obtain a warrant.

11           28.    The removal of a child from his/her parent's custody without either a warrant or

12   exigent circumstances is a violation of the parent's liberty interests secured by the Fourth and

13   Fourteenth Amendments to the United States Constitution.

14           29.    In the Detention Report prepared for the Juvenile Court by COUNTY social

15   worker BRENDA VALENCIA, and signed by her supervisor, COUNTY employee PAULA

16   ALVARADO, Defendant VALENCIA did _not_ address the need to obtain a warrant or to find

17   exigent circumstances.

18           30.    On November 7, 2014, the Juvenile Court adjudicated Adina a dependent of the

19   Court pursuant to W&I Code §300.

20           31.    Adina stayed at the emergency shelter for approximately three (3) days.  On or

21   around November 6, 2014, the Defendant COUNTY, through the intervention and actions of

22   Defendant ALBA, placed Adina in the care of Defendants LUIS and PATRICIA CANAL.

23           32.    At all times relevant to this Complaint, Defendants LUIS and PATRICIA CANAL

24   were _not_ licensed by the State of California, or the COUNTY, to be foster parents.  Instead,

25   pursuant to the statutory scheme set forth in H&S § 1506, et seq., the COUNTY licensed ALBA.

26   Pursuant to H&S § 1506, et seq., ALBA was then responsible for certifying that Defendants LUIS

27   ───────────────────────────

28   [3]  W&I §309 says that the social worker "shall" release the child (_not_ that the social
     worker "may" release the child), making this a mandatory duty, _not_ a discretionary decision.

1   and PATRICIA CANAL met all licensing requirements of the state (and/or the COUNTY) and
2   completed all necessary training.

3       33.    The COUNTY did <u>not</u> conduct an assessment of the relative home of Scott and
4   Denise Faris between the time that Mr. and Mrs. Faris requested placement of Adina with them
5   and the time that Adina was fatally injured in foster care on December 9, 2014.  Thirty-six (36)
6   days elapsed between the time that Adina's grandparents requested she be placed with them and
7   the time that Adina was found unresponsive in her foster home where she was placed with
8   strangers.   This was in violation of the requirement that such an assessment be performed within
9   thirty (30) days.

10      34.    On December 9, 2014, at approximately 6:33 p.m., some unknown person at the
11  home of Defendants LUIS and PATRICIA CANAL called 911 and hung up.  Although the 911
12  operator called back to attempt to contact the 911 caller, no one at the CANAL home answered
13  the phone.  The Calexico Police responded to the CANAL foster home to investigate the 911 hang
14  up call.

15      35.    Upon information and belief, Defendants LUIS and PATRICIA CANAL failed to
16  call the paramedics or any emergency personnel despite the fact that Adina was unresponsive and
17  gravely injured.  At most, someone in the CANAL home called 911 and hung up.

18      36.    When police arrived at the CANAL foster home to investigate the 911 hang up,
19  neither LUIS nor PATRICIA CANAL were attempting to revive, assist, or even comfort Adina.
20  When police found Adina, her skin was blue and cool to the touch, and she was not breathing.

21      37.    A police officer performed CPR on Adina but was unable to resuscitate her.

22      38.    After attempting to resuscitate Adina, the police transported her to the hospital,
23  where she later died from her injuries.

24      39.    According to Defendant LUIS CANAL's statement to the police, he observed
25  ADINA jumping from one bed to another and asked her to stop but she did not stop jumping.
26  LUIS CANAL reported that he then left ADINA in her room alone jumping from bed to bed and
27  did not check on her until 45 minutes later, when he found her unresponsive.

28      40.    At some time after ADINA was injured in the CANAL home, the COUNTY

7

removed the CANAL's three biological children for suspicion of abuse and/or neglect.

## INJUNCTIVE RELIEF

41.     On information and belief, Plaintiffs alleges that the COUNTY has a custom and practice of removing children from the custody of their parents without a warrant or exigent circumstances.   Plaintiff Ashley is a resident of the Imperial County and is pregnant. Accordingly, she is liable to be subject to this illegal policy in the future.  Plaintiff does not have an adequate remedy at law to prevent any such damages other than injunctive relief.

## THE COUNTY IS *NOT* IMMUNE FROM SUIT AT THIS STAGE

42.     The following statutes, inter alia, control and govern the relationship, and responsibilities, of Defendant COUNTY and Defendant ALBA in this situation:

- H&S §1506(b)(1):  A foster family agency shall certify to the department that the home has met the department's licensing standards.

- H&S §1506(b)(2): The foster family agency shall issue a certificate of approval to the certified family home upon its determination that it has met the standards established by the department and before the placement of any child in the home. The certificate shall be valid for a period not to exceed one year. The annual recertification shall require a certified family home to complete at least 12 hours of structured applicable training or continuing education. At least one hour of training during the first six months following initial certification shall be dedicated to meeting the requirements of paragraph (1) of subdivision (b) of Section 11174.1 of the Penal Code.

- H&S §1506(b)(3): If the agency determines that the home no longer meets the standards, it shall notify the department and the local placing agency.

- H&S §1506(c): The department shall develop licensing regulations differentiating between foster family agencies that provide treatment of children in foster families and those that provide nontreatment services.

- H&S §1506.5(a): Foster family agencies shall not use foster family homes licensed by a county without the approval of the licensing county. When approval is granted, a written agreement between the foster family agency and the county shall specify the nature of administrative control and case management responsibility and the nature and number of the children to be served in the home.

- H&S §1506.5(b): Before a foster family agency may use a licensed foster family home it shall review and, with the exception of a new fingerprint

8

clearance, qualify the home in accordance with Section 1506.

- H&S §1506.5(c): When approval is given, and for the duration of the agreement permitting the foster family agency use of its licensed foster family home, no child shall be placed in that home except through the foster family agency.

- Numerous portions of Division 31 of the California Department of Social Services California Department of Social Services' Manual of Policies and Procedures (hereinafter, "Division 31"). This includes, but is not limited to, the requirement to visit a child in the home on a monthly basis, the requirement to visit the child's parents on a monthly basis, etc.

43.    Plaintiffs are informed and believe, and thereon allege, that Defendant COUNTY, by and through its agents and employees, including, but not limited to, the DOE Defendants listed herein, failed to comply with mandatory statutory duties regarding the supervision and monitoring of Defendants LUIS and PATRICIA CANAL and ALBA. This includes, but is not limited to, failing to comply with the mandatory duties and requirements of H&S sections 1506 and 1506.5, above, which were designed to protect the safety of individuals like Plaintiff Adina.

44.    Anticipating the arguments many governmental entities make in a demurrer, Plaintiffs use this section to clarify the law on governmental immunity as it applies to foster children in situations such as the instant case. While the COUNTY may ultimately be entitled to immunity (if it can show it complied with all mandatory duties imposed by state law), it is not entitled to immunity at this stage because Plaintiffs have properly pleaded violations of mandatory duties. This section addresses (1) the statutory waiver of sovereign immunity, (2) the absence of licensing immunity, and (3) the absence of discretionary immunity.

45.    The COUNTY is not entitled to statutory immunity. As set forth above, Plaintiffs allege that, in committing the acts and omissions set forth herein, the COUNTY's agents and/or employees whose conduct is at issue in this complaint (including DOE Defendants) were acting within the course and scope of their employment with Defendant COUNTY. Government Code §820.2(a) holds that "… a public employee is liable for injury caused by his act or omission to the same extent as a private person." Government Code § 815.2(a) states, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment…" Thus, as a threshold matter, Plaintiffs may sue individual COUNTY

1   employees (including the DOE Defendants named herein) under Government Code §820.2(a),

2   and the COUNTY is vicariously liable for the torts committed by its employees under California

3   Government Code § 815.2(a).

4       46.     The licensing immunity contained in Government Code § 818.4 in not applicable

5   here because Plaintiffs are not grounding any cause of action or allegation against the COUNTY

6   for any COUNTY employee's action in issuing, revoking, or denying certification to Defendants

7   LUIS and PATRICIA CANAL.

8       47.     With respect to licensing (as opposed to the inspection and monitoring duties of

9   Adina, which the COUNTY retains even when it uses a foster family agency), Plaintiffs'

10  complaint against the COUNTY is grounded in its failure to perform the inspection, supervision,

11  and control functions required by state regulations with respect to Defendant ALBA.

12      48.     Government Code § 818.4 does not provide immunity to municipalities for failure

13  to perform the inspection, supervision and control functions required by state regulations. *Elton*

14  *v. County of Orange*, (1970) Cal.App.3d 1053, 1059.  Therefore, Defendant COUNTY is liable

15  for its failure to perform any mandatory functions required by law.

16      49.     Finally, the COUNTY's employees (and, by extension, the COUNTY) sued herein

17  (both named and DOE Defendants) are not entitled to discretionary immunity because Plaintiff

18  alleges contends that the COUNTY, and its employees, failed to fulfill mandatory duties imposed

19  upon it by state law.  The law distinguishes between *discretionary* duties (Government Code

20  §820.2) and *mandatory* duties (Government Code §815.6).

21      50.     Government Code § 815.6 states, "Where a public entity is under a mandatory duty

22  imposed by an enactment that is designed to protect against the risk of a particular kind of injury,

23  the public entity is liable for an injury of that kind proximately caused by its failure to discharge

24  the duty unless the public entity establishes that it exercised reasonable diligence to discharge the

25  duty."

26      51.     "[I]f a public entity has a mandatory duty imposed by an enactment that is

27  designed to prevent a particular kind of injury, the entity is liable for an injury of that kind that is

28  proximately caused by its failure to discharge the duty . . ."  *Scott v. County of Los Angeles*,

1  (1994) 27 Cal.App.4th 125, 139 (citations omitted).   An "enactment" specifically includes

2  Division 31. *Scott,* 27 Cal.App.4th at 142.

3     52.     "A public entity may be directly liable for failure to discharge a mandatory duty."

4  *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 469.

5  "[P]ublic entities are liable under section 815.6 of the Government Code for injuries to children in

6  foster care which occur as a result of any violation of ... Welfare and Institutions Code section

7  16500 and following ..." *Scott,* 27 Cal. App.4th at 134-135.   "[A] county and its employees are

8  not immune under *Government Code sections 815.2 and 821.6* for negligence in the performance

9  of such functions.  Nor do shortfalls in government budgets excuse the performance of mandatory

10  duties imposed by the regulations." *Id* at 135 (footnote omitted).  This includes the mandatory

11  duty to assess the statutory factors of W&I Code §16501.1 as part of its placement decision

12  (*Becerra v. County of Santa Cruz,* (1998) 68 Cal. App. 4th 1450, 1460) and to visit a foster child

13  face-to-face in the foster home once a month (*Scott,* 27 Cal.App.4th at 139, 152).

14     53.     The three (3) part test for whether a public entity is liable is: "(1) an enactment

15  must impose a mandatory, not discretionary, duty; (2) the enactment must intend to protect

16  against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for

17  liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered."

18  *County of Los Angeles v. Superior Court (Terrell R.)* (2002) 102 Cal. App. 4th 627, 638-39.  Each

19  part of the test is pled in this Complaint.

20     54.     Finally, with respect to discretionary immunities, even where governmental

21  employees do enjoy immunity for their discretionary acts, they must prove that they made a

22  reasoned, discretionary decision in order for this immunity to apply.

23     55.     As the Court of Appeal instructs, a "public agency must demonstrate its employee

24  in fact consciously exercised discretion in connection with the negligent acts or omissions

25  charged in order to invoke the 'discretionary act' immunity provisions of *Government Code*

26  *section 820.2.*" *Elton*, 3 Cal.App.3d at 1058 (citing *Johnson v. State of California* (1968) 69

27  Cal.2d 782).  "[T]o be entitled to immunity the state must make a showing that such a policy

28  decision, consciously balancing risks and advantages, took place." *Id* (citations omitted).  Thus, a

county employee who negligently places a child in a foster home is <u>not</u> entitled to hide behind the shield of discretionary immunity:

> Decisions made with respect to the maintenance, care or supervision of plaintiff, as a dependent child, or in connection with her placement in a particular home, may entail the exercise of discretion in a literal sense, but such determinations do not achieve the level of basic policy decisions, and thus do not, under the provisions of *Government Code section 820.2*, preclude judicial inquiry into whether negligence of public employees was involved and whether such negligence caused or contributed to plaintiff's injuries.

*Elton*, 3 Cal.App. 3d at 1058.

56.   Accordingly, Plaintiffs may properly hold Defendant COUNTY liable for its employees' failure to properly supervise Adina's placement.  Plaintiffs also may properly assert a cause of action against the COUNTY for its employees' failure to properly discharge its statutory duties regarding Defendant ALBA.  *Accord, Elton*, 3 Cal.App. 3d at 1059.

57.   Accordingly, neither the COUNTY nor its employees are immune from suit at the pleading stage of the litigation.   Plaintiffs have properly pled that the COUNTY and its employees violated mandatory duties and violated Plaintiffs' constitutional rights.   California state immunity statutes do not apply to the violations of Plaintiffs' constitutional rights, and immunity only attaches to the common law causes of action if Defendants are able to demonstrate that they complied with all mandatory duties pertaining to Adina's welfare and/or that its errors and omissions are entitled to discretionary immunity.   This cannot be done based on the instant pleadings.

## FIRST CAUSE OF ACTION

### Negligence

**(Against Defendants COUNTY, GARCIA, VALENCIA, ALVARADO and DOES 1-100)**

58.   Plaintiffs hereby incorporate, by reference, all allegations contained in the preceding paragraphs of this Complaint as though the same were set forth herein in full.

59.   Plaintiffs' allegations against Defendants include (1) direct liability for the failure to comply with mandatory duties owed to Plaintiff, (2) derivative liability for the COUNTY for the negligent acts of its employees, and (3) the failure of the individual Defendants (both named

1    and DOE Defendants) to exercise discretion with regard to ministerial actions that do not rise to

2    the level of "discretionary" acts to which immunity could attach.

3        60.     At all times mentioned herein, Defendants, and each of them, negligently and

4    carelessly failed to exercise reasonable care in the performance of and/or failed to discharge the

5    mandatory, statutorily imposed duties they owed to Plaintiff. Because the COUNTY employees

6    (including, but not limited to, GARCIA, VALENCIA, AVARADO, and DOE employees) carried

7    out the acts and omissions set forth herein while in the course and scope of their employment with

8    the COUNTY, Defendant COUNTY is liable in respondeat superior for the tortuous acts and

9    omissions of its employees described herein.

10       61.     Plaintiffs allege that Defendant COUNTY's employees violated, inter alia, the

11    following specific enactments imposing mandatory duties:

12        a.    The requirements of W&I § 306(b), which state that before taking a minor
13           into custody, a county employee <u>shall</u> consider whether the child can remain
            safely in his or her residence. The consideration of whether the child can
14          remain safely at home <u>shall</u> include, but is limited to, the following factors:

15            (1) Whether there are any reasonable services available to the worker
              which, if provided to the minor's parent, guardian, caretaker, or to the
16            minor, would eliminate the need to remove the minor from the custody of
              his or her parent, guardian, or caretaker.
17

18           (2) Whether a referral to public assistance pursuant to Chapter 2
              (commencing with Section 11200) of Part 3, Chapter 7 (commencing with
19           Section 14000) of Part 3, Chapter 1 (commencing with Section 17000) of
              Part 5, and Chapter 10 (commencing with Section 18900) of Part 6, of
20           Division 9 would eliminate the need to take temporary custody of the
              minor. If those services are available they shall be utilized.
21

22           (3) Whether a nonoffending caretaker can provide for and protect the child
              from abuse and neglect and whether the alleged perpetrator voluntarily
23           agrees to withdraw from the residence, withdraws from the residence, and is
              likely to remain withdrawn from the residence.
24

25        b.    The duty of the social worker (GARCIA) to release Adina to a responsible
            relative, in this case the grandparents, on the day Ashley was arrested, as
26          required by W&I §309.

27        c.    The duties regarding the monitoring, supervision, and control of Defendant
            ALBA imposed by H&S sections 1506, *et seq.*

28

COMPLAINT FOR INJURIES AND DAMAGES

d.  The duty to ensure that a social worker visited Plaintiff "face-to-face" once each calendar month, and inside the foster home, as required by Division 31, §320.  The purpose of the social worker's visits is to monitor the safety of the child and assess the child's well-being.

e.  The duty to ensure that a social worker met face-to-face and monthly with Adina's biological parents. (Division 31, §325.)

f.  The duty to ensure that a social worker met face-to-face every month with Defendant LUIS and PATRICIA CANAL.  (Division 31, §330)

g.  The duty to complete all requirements set forth in Division 31, §31-445.1, for assessing the LUIS and PATRICIA CANAL home prior to the placement of Plaintiff in the home.

h.  The duty to ensure that the LUIS and PATRICIA CANAL foster home was a "safe setting" that would meet "the needs of the child" before placing Plaintiff in the home.  (W&I Code §§16501.1(c) and 16501.15, and Penal Code § 1165.5.)

i.  The duty to approve the assessment of relatives following the placement request made by Denise and Scott Faris within thirty (30) days of the request as required by the settlement agreement in *Higgins v. Saenz* and All County Letter No. 05-13.

62.  These violations by the COUNTY, and its agents and/or employees (including, but not limited to, GARCIA, VALENCIA, ALVARADO and DOES 1-100) were an actual and proximate cause of the injuries and damages suffered by Plaintiffs.

63.  The Division 31 Manual is compromised of a series of regulations promulgated by the State of California.  The California Court of Appeal has explicitly held that Division 31 constitutes an "enactment" under Government Code §815.6.  Therefore, its requirements impose mandatory duties on the COUNTY.  *Scott,* 27 Cal.App.4th at 142.

64.  The language and function of the Division 31 Manual is intended to stop foster children from being harmed, abused, and neglected by the very foster parents assigned to ensure their safety and wellbeing.  *See, inter alia, County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 638; *Walt Rankin & Ass. Inc., v. City of Murrieta* (2000) 84 Cal.App. 4th 605, 626.

65.  As a direct and proximate cause of the negligence of Defendants, and each of them, including, but not limited to, their failure to comply with mandatory duties and their failure

14

1    to actually exercise meaningful discretion when discretionary decisions were required, Plaintiff

2    suffered the harm described above.  This harm includes, but is not limited to, the loss of Adina's

3    love, companionship, comfort, care, assistance, protection, affection, society and moral support.

4                                **SECOND CAUSE OF ACTION**

5                                        **Negligence**

6               **(Against Defendants LUIS CANAL and PATRICIA CANAL)**

7          66.    Plaintiffs hereby incorporate, by reference, all allegations contained in the

8    preceding paragraphs of this Complaint as though the same were set forth herein in full.

9          67.    According to Defendant LUIS CANAL's statement to the police, he observed

10   Adina jumping from one bed to another and, although he asked her to stop jumping, she did not

11   do so.  Defendant contends he then left Adina alone in the bedroom and found her unresponsive

12   when he checked on her 45 minutes later.  If true, this was grossly negligent conduct.

13         68.    Defendants LUIS and PATRICIA CANAL were foster parents certified by

14   Defendant ALBA and who were being paid to provide care to Adina.  As such, they had a legal,

15   and moral, duty to use reasonable care in caring for Adina.  Defendants LUIS and PATRICIA

16   CANAL breached this duty of reasonable care to Adina when they negligently subjected Adina to

17   an unreasonable risk of harm by leaving her alone under the circumstances described herein.

18         69.    Defendants LUIS and PATRICIA CANAL's negligence in placing Adina at an

19   unreasonable risk of harm was an actual and proximate cause of Adina's injuries and death.

20   Accordingly, Defendants LUIS and PATRICIA CANAL's negligence was a substantial factor in

21   causing harm to Adina.

22         70.    As the direct, foreseeable, and proximate result of the negligent acts and omissions

23   of Defendants LUIS and PATRICIA CANAL, Plaintiffs' daughter, Adina, died while in the

24   Defendants' care, custody, and control, and Plaintiffs have sustained the injuries and damages

25   alleged herein.  The damages Plaintiffs have suffered include, but are not limited to, the loss of

26   Adina's love, companionship, comfort, care, assistance, protection, affection, society and moral

27   support.

28   //

**THIRD CAUSE OF ACTION**

**Negligence**

**(Against Defendant ALBA and DOES 1-100)**

71.     Plaintiffs hereby incorporate, by reference, all allegations contained in the preceding paragraphs of this Complaint as though the same were set forth herein in full.

72.     As set forth above, at all times relevant to this Complaint, Defendant ALBA was a foster family agency within the meaning of H&S §§ 1506, et seq., and was required to comply with state laws governing foster family agencies, as well as the statutory and common law rules regarding negligence.

73.     H&S §1506, subsections (b)(1) and (b)(2), state that a foster family agency must certify that a foster home has met the department's licensing standards before placing any child in the home.  Subsection (b)(2) further states, "The certificate [issued by the foster family agency] shall be valid for a period not to exceed one year. The annual recertification shall require a certified family home to complete at least 12 hours of structured applicable training or continuing education."

74.     Thus, ALBA, and its agents and employees (DOES 1-100) had a duty to ensure that Defendants LUIS and PATRICIA CANAL's home complied with all applicable requirements, and that Defendants LUIS and PATRICIA CANAL had completed all necessary training, on an annual basis.

75.     Under the system created by H&S sections 1506, *et seq.*, foster family agencies, like ALBA, are licensed by the state (or, if the state delegates this responsibility, the county), and are then responsible for ensuring that the foster homes in which they place children meet all requirements of state and county law.  This is <u>not</u> an eleemosynary endeavor:  foster family agencies are paid to perform this service.  Accordingly, as the foster family agency charged with placing Adina, Defendant ALBA, and DOES 1-100, owed Plaintiffs a duty to comply with all applicable statutory laws, as well as the common law regarding negligence.

76.     Here, Defendant ALBA, and its agents and/or employees (including, but not limited to, those sued herein as DOES) breached its duty to Plaintiffs by, inter alia, negligently

16

1  certifying Defendant LUIS and PATRICIA CANAL's home and/or negligently placing Adina in

2  Defendant LUIS and PATRICIA CANAL's home despite the fact that a reasonable person in said

3  agents' or employees' position would have known that Defendants LUIS and PATRICIA

4  CANAL could not provide adequate care for Adina.  As a result of ALBA's negligence, Adina

5  suffered fatal injuries as a result of Defendant LUIS and PATRICIA CANAL's negligent or

6  intentional acts.

7        77.    The acts and omissions of these agents and/or employees of Defendant ALBA

8  alleged herein (including, but not limited to, those of DOES 1-100) were performed during the

9  course and scope of said agents' and/or employees' agency and/or employment with Defendant

10  ALBA.  Accordingly, Defendant ALBA is vicariously liable for the acts and omissions of their

11  employees in this regard.

12        78.    As the direct, foreseeable, and proximate result of the negligent acts and omissions

13  of Defendant ALBA, and DOES 1-100, Adina died while in a foster home certified and

14  supervised by Defendant ALBA and Plaintiffs have sustained the injuries and damages alleged

15  herein.  The damages Plaintiffs have suffered include, but are not limited to, the loss of Adina's

16  love, companionship, comfort, care, assistance, protection, affection, society and moral support.

17  **FOURTH CAUSE OF ACTION**

18  **Negligent Hiring, Retention, Supervision, and Control**

19  **(As to Defendants COUNTY and DOES 1-100)**

20        79.    Plaintiffs hereby incorporate by reference all preceding paragraphs and allegations

21  in this complaint as if they were set forth herein in full.

22        80.    Defendant COUNTY is liable under respondeat superior for the negligent acts and

23  omissions of its officers, agents, and/or employees, including DOE Defendants 1-100, as set forth

24  in Government Code § 815.2(a) and § 820(a).

25        81.    At all times set forth herein, the COUNTY's employees, including DOES 1-100,

26  were acting within the course and scope of their employment with the COUNTY. The COUNTY

27  is liable for both the negligent and intentional acts and omissions of its employees, which were

28  committed within the course, and scope of their employment. *See, inter alia, Mary M. v. City of*

1    *Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles* (2009) 172 Cal.App.4th 320,

2    330.

3         82.    Supervisory DOE Defendants employed by the COUNTY, are liable both for their

4    own negligent acts and omissions and because they failed to properly supervise and control the

5    COUNTY employees under their control, including, but not limited to, Defendants GARCIA,

6    VALENCIA, ALVARADO, and DOE Defendants.

7         83.    In committing the acts and omissions described herein above, Defendants, and

8    each of them, knew, or in the exercise of reasonable care and prudence, should have known, that

9    their actions likely would result in Plaintiffs' suffering harm, including, but not limited to, mental

10   anguish and mental and emotional distress.

11        84.    At all time relevant to this complaint, the COUNTY, and its officers, agents,

12   employees (including, but not limited to, DOES 1-100), and each of them, owed a duty to

13   Plaintiffs to avoid subjecting Adina to unreasonable risks of harm while Adina was under the

14   COUNTY's care, custody, control, and supervision.   While Adina was in foster care, Defendants,

15   and each of them, had a duty to act in Adina's best interests, as she was a minor who was

16   entrusted to the COUNTY's care, custody, supervision, and control.

17        85.    Defendants, and each of them, including the COUNTY and DOES 1-100, breached

18   the duty they owed to Plaintiffs to avoid subjecting Adina to unreasonable risks of harm by hiring

19   and retaining unfit and incompetent officers, agents, and employees.  This includes, but is not

20   limited to, Defendants GARCIA, VALENCIA, ALVARADO, and DOE Defendants.

21        86.    Defendants, and each of them, including the COUNTY and DOES 1-100, breached

22   the duty they owed to Plaintiffs to avoid subjecting Adina to unreasonable risks of harm by failing

23   to appropriately discipline, supervise, manage, direct, and/or control, its officers, agents, and

24   employees (including, but not limited to, Defendants GARCIA, VALENCIA, ALVARADO, and

25   DOE Defendants).

26        87.    At all times relevant to this complaint, COUNTY, its officers, agents, and/or

27   employees, including DOES 1-100, and each of them, had actual or constructive knowledge and

28   knew or, in the exercise of reasonable care, should have known that the COUNTY's officers,

1  agents, employees (including, but not limited to, Defendants GARCIA, VALENCIA,

2  ALVARADO, and DOE Defendants) were unfit and/or incompetent, and that this unfitness or

3  incompetence created a particular risk to others, including Adina.

4        88.    The unfitness and/or incompetence of COUNTY's officers, agents, and/or

5  employees (including, but not limited to, Defendants GARCIA, VALENCIA, ALVARADO, and

6  DOE Defendants), was a direct and proximate cause in the harm suffered by Adina.

7        89.    The negligence of Defendants COUNTY and DOES 1-50 in hiring, supervising,

8  and/or retaining COUNTY's officers, agents, employees (including, but not limited to,

9  Defendants GARCIA, VALENCIA, ALVARADO, and DOE Defendants) was a substantial factor

10  in causing the harm suffered by Plaintiffs.

11        90.    The negligence of Defendants COUNTY and DOES 1-100 in negligently hiring

12  retaining, disciplining, supervising, managing, directing, and/or controlling, its officers, agents,

13  and employees (including, but not limited to, Defendants GARCIA, VALENCIA, ALVARADO,

14  and DOE Defendants) was a substantial factor in causing the harm suffered by Plaintiffs.

15        91.    As the direct and proximate result of the negligent hiring, supervision, retention,

16  and control of the COUNTY and its agents and employees (including, but not limited to, DOES

17  1-100), Plaintiffs' daughter, Adina, died while in COUNTY's care, custody, and control, and

18  Plaintiffs have sustained the injuries and damages alleged herein.

### FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983 – Deprivation of the 4th and 14th**

**Amendment Right to Parent/Child and Familial Relation**

**(Against Defendants GARCIA, VALENCIA, ALVARADO, and DOES 1-100)**

23        92.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and

24  allegations in this complaint.

25        93.    "[P]arents and children have a well-elaborated constitutional right to live together

26  without government interference." *Wallis v. Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000).

27  Under the Fourth and Fourteenth Amendments to the United States Constitution, it is unlawful to

28  remove a child from the care, custody, and control of its parents without probable cause,

1   exigency, or a court order.  This concept is so well established that any reasonable COUNTY

2   agent or CITY police officer facing similar circumstances as those present here would know that

3   -- in the absence of exigent circumstances -- it was a violation of Plaintiffs' rights to seize and

4   detain the Adina from Ashley's custody, care, and control without first obtaining a protective

5   custody warrant or other similar court order.

6          94.     Here, no exigent circumstances existed.  Ashley and the other two adults in the

7   home had been placed under arrest, and the police had physical custody of Adina.  Accordingly,

8   Adina was in no immediate danger, and there was plenty of time for Defendant GARCIA to have

9   complied with the law and sought to obtain a warrant from the Imperial County Superior Court.

10  For reasons known only to herself, however, Defendant GARCIA chose not to do so.

11         95.     Defendants VALENCIA and ALVARADO then compounded this violation when

12  they failed to address the issue of a warrant, or exigent circumstances, in the Detention Report

13  given to the Juvenile Court which Defendant VALENCIA prepared, and Defendant ALVARADO

14  approved.    Long-standing  case  law  holds  that  where  one  employee  violates  a  citizen's

15  constitutional rights, it is a violation for another employee not to intervene if he/she may safely do

16  so.    Here,  there  were  no  factors  which  made  it  unsafe  for  Defendants  VALENCIA  and/or

17  ALAVARDO to intervene to prevent the warrantless seizure of Adina from Ashley.  Instead of

18  intervening,  however,  Defendant  VALENCIA  did  not  mention  the  violation,  and  Defendant

19  ALVARADO, who was a supervisor, ratified and condoned it.

20         96.     Defendants, and each of them and at all times relevant herein, have an affirmative

21  duty and obligation not to violate the protections guaranteed Plaintiff under the United States

22  Constitution, including the protection of parental rights, the right to privacy, family integrity, and

23  the right to familial relations.

24         97.     Defendants, and each of them, while acting in the course and scope of their

25  employment with the Defendant COUNTY (and thereby acting under color of law) jointly

26  collaborated and acted together (with each other and with DOES 1-100) to deprive Ashley and

27  Adina of their Constitutional rights to their parental/child relationship and familial association

28  under the Fourth and Fourteenth Amendment to the United States Constitution.  This includes, but

1    is not limited to, willfully seizing Adina from Ashley without first obtaining a warrant, and in the

2    absence of any exigent circumstances.

3         98.    In depriving Plaintiffs of their Constitutional rights to the parental/child

4    relationship and familial association under the Fourth and Fourteenth Amendment to the United

5    States Constitution, Defendants, and each of them, directly and proximately caused past and

6    future damages to Plaintiffs as prayed for herein, including mental anxiety, anguish and upset.

7    Plaintiffs are also entitled to recover their attorney fees and the costs of suit herein pursuant to

8    Title 42 United States Code ("U.S.C.") §§ 1983-1988.

9                          **SIXTH CAUSE OF ACTION**

10   **42 U.S.C. § 1983 – Unconstitutional Official Policy, Practice, or Custom (*Monell* Claim)**

11                    **(Against Defendant COUNTY)**

12        99.    Plaintiffs incorporate, as if set forth in full, all preceding paragraphs and

13   allegations in this complaint.

14        100.   Plaintiffs allege that Defendant COUNTY has unlawful customs, practices and

15   habits of improper and inadequate hiring, training, retention, discipline and supervision of its

16   investigators, employees (including social workers such as Defendants GARCIA, VALENCIA,

17   ALVARADO, and DOE Defendants) and agents, which proximately caused the Constitutional

18   deprivations, injuries and damages suffered by Plaintiffs and alleged herein. These practices

19   unconstitutional include, but are not limited to, the practice of failing to obtain a warrant before

20   removing a child from the custody of said child's parents, in violation of the Fourth and

21   Fourteenth Amendment to the United States Constitution, as occurred here.

22        101.   Plaintiffs are informed and believe, and thereon allege, that on more than one

23   occasion the COUNTY engaged in constitutionally improper conduct to such an extent that the

24   conduct took on the force and effect of "policy" such that the official and unofficial customs,

25   practices and policies listed herein became the standard practice of Defendant COUNTY.  These

26   customs, practices, and/or policies include, but are not limited to, the following:

27   //

28   //

a.  Seizing and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

b.  Acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

102.  This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings.  Plaintiffs may seek leave to amend this pleading as more information becomes available.

103.  Plaintiffs are informed and believe, and thereon allege, that in this particular case, when confronted with the illegal conduct of Defendants GARCIA, VALENCIA, ALVARADO, and DOE Defendants that deprived Plaintiff of her constitutional rights, the COUNTY (by and through its policy-making level employees, including DOE Defendants) ratified and condoned the illegal practices described herein.

104.  The custom and practice of failing to obtain a warrant before removing a child from the custody of the child's parents -- and the ratification by the supervisory employees of Defendant COUNTY with final policy-making authority (including DOE Defendants) of the illegal actions performed by rank-and-file COUNTY employees pursuant to this policy -- was the moving force behind the COUNTY employee Defendants' violation of Plaintiff's constitutional rights set forth hereinabove.

105.  Accordingly, the COUNTY is liable for the deprivation of Plaintiffs' constitutional rights by the COUNTY's employees under *Monell v. Department of Social Services of the City of New York* (1978) 436 U.S. 658, and its progeny, which hold that a municipal entity may be held liable for violations of Constitutional rights committed by its employees if the violation was based on either: (1) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage" with the force of law; or (2) the fact that the illegal and unconstitutional conduct was ratified by an individual with final policy-making authority.  Here, both basis of liability are present.

106.   In depriving Plaintiffs of their Constitutional rights to their parental/child relationship and familial association under the Fourth and Fourteenth Amendment to the United States Constitution, the COUNTY directly and proximately caused past and future damages to Plaintiffs as prayed for herein, including mental anxiety, anguish and upset.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

(1)   For general, compensatory, and incidental damages in a sum according to proof at the time of trial in an amount in excess of the jurisdiction limits of this Court;

(2)   For special damages in an amount according to proof at the time of trial;

(3)   For costs of suit incurred herein;

(4)   For attorney's fees pursuant to 42 U.S.C. §§ 1983-1988 and any and all other statutory, legal, or equitable grounds that may apply; and,

(5)   For any and all such other further relief as this Court may deem just and proper, including, but not limited to, interest and/or injunctive relief.

## JURY TRIAL DEMAND

Plaintiff hereby respectfully demands a jury trial on all causes of action for which such a trial is available by law.

SINGLETON LAW FIRM, APC

Dated:  March 31, 2015          By:   _Gerald Singleton_
                                      Gerald Singleton, Esq.
                                      Brody A. McBride, Esq.
                                      Attorneys for Plaintiff ASHLEY ALBIOSDELAPINIA

Dated:  March 31, 2015          By:   _Gerald Singleton_ for
                                      Maxwell Agha, Esq.
                                      Attorney for Plaintiff STEVEN A. SMITH

23

COMPLAINT FOR INJURIES AND DAMAGES